Good morning, Your Honor. My name is Robert Crowe. I represent Petitioner Appellant Yacola Hiskus. May it please the Court. I feel very privileged to be here today because I feel that this is a very important case before the Court. As I'm sure the Court is aware, there are a very large number of sex crime cases that are tried in the state of California every year, and every year there are more and more. In the vast majority of those cases, there is other act evidence that is presented against the defendant. And then, in relation to the other act evidence, the trial courts give California jury instruction 2.50.1 and 2.50.01, which states, if you find the defendant committed a prior sexual offense, you may, but are not required to infer, that the defendant had a disposition to commit sexual offenses. If you find the defendant had this disposition, you may, but are not required to infer, that he was likely to commit and did commit the crime or crimes for which he is accused or any lesser offense. I didn't try this case, but I have handled a number of other sexual offense crimes in the state of California courts, and I can tell you, when other act evidence comes in against the defendant in these kinds of cases in particular, it is devastating. And you couple that evidence with this jury instruction, and that almost invariably leads to a guilty verdict, especially when the trial court instructs the jury that this other act evidence is admissible for any of three purposes, which is, one, credibility, and here the defendant did testify, two, evidence of a common scheme or plan, or three, to prove a criminal disposition. If a jury resolves any of those issues, any one of those issues, against the defendant based on other act evidence, based upon a lowered burden of proof by a preponderance of the evidence under that instruction, the defendant is going down the belt hold. That is it for the defendant. And that violates the Supreme Court's decision in Inouye Winship, which says that the burden of proof, the government bears a burden of proof beyond a reasonable doubt. It cannot be diluted in any way. And this admission of that other act evidence, coupled with that jury instruction, was absolutely devastating in this case. And the State's primary argument is context and jury instruction, that the jury should have understood and did understand that the crime had to be proved beyond a reasonable doubt. So what's your response to that? Well, my response is the other act evidence is extremely powerful. And here there were evidence from two other girls, Zamora and Melissa, that the defendant committed prior similar acts with them. And that is extremely powerful. And the effect of that powerful evidence, plus that instruction, creates a significant possibility that a jury may have convicted the defendant, petitioner, you know, based upon a lowered burden of proof by preponderance of the evidence. And we simply can't take that risk. That's what Inway Winship teaches us. And it's not harmless error. That's, I think, the other part of that argument is, well, there are other jury instructions that did instruct the jury that the State's burden of proof was beyond a reasonable doubt. But I regard that as part of the harmless error analysis. And the Supreme Court's cases in Louisiana, Sullivan v. Louisiana and Jackson v. Virginia, tell us that instructional error on the burden of proof can never be harmless. So that's my response to that. There's a possibility of jury confusion here on the burden of proof. And the jury could basically do a two-step, saying, okay, we've heard this powerful other act evidence from Zamora and Melissa. And we find by preponderance of the evidence that he did those other acts. Therefore, we find either A, he was not credible on the stand, B, he had a common scheme or plan, or C, he had a criminal disposition. That's it. Close the book. He's guilty. So there was a significant risk here. The jury convicted him based upon the other act evidence and based upon this jury instruction, which was, you know, California Jury Instruction 2.50.01 and 2.50.1. And that's the risk is simply, you know, not acceptable. So how would you have worded the instructions? Would you have just excised the reference to burden of proof from the other act instructions or? Well, I would have said, I would have said these other acts have to be, you have to That doesn't seem to be the law anywhere, though. Well, it isn't. That's why I'm here. And that's why I think this is a very significant case. Because when you couple that, and here the trial court, on the one hand, tells the jury, this other act evidence is admitted for a very limited purpose. And then he says, you know, it's for credibility, common scheme or plan or criminal disposition. That's not a very limited purpose. Those are very broad and extremely powerful purposes. And if any one of those issues are resolved against the defendant, that's it. There's a conviction. And based on that, we simply don't know. And the danger here is simply too great that the jury may have resolved any one of those powerful issues against the defendant based upon a preponderance of the evidence and not based upon beyond a reasonable doubt. So when I started practicing criminal defense law and I saw this instruction for the law, I was, my first reaction was, this can't be the law. And I look at it, and... Has there been any effort by the criminal bar to change that standard instruction in the California courts? Yeah, I'm not knowledgeable about that. I'm not able to answer that question. I think we have your argument in hand. Why don't you save some time for rebuttal and we'll hear what the State has to say. Very well. Thank you, Your Honor. Good morning, Your Honors. Anne Watkin for Respondent. May it please the Court. With regard to the special instruction, our position is that it did not violate appellant's due process rights. And as the Court pointed out, we can't look at just the challenge portion of the instruction in isolation. The part of the special instruction which appellant challenges does not provide the beyond a reasonable doubt standard with regard to the charged offenses. However, when read in its entirety, which is what the law requires that we do, there were numerous references to the fact that the beyond a reasonable doubt standard apply specifically to the charged offenses. And, excuse me, Your Honors, plus the overall charge given to the jury ensured that they applied the proper standard and not a lesser standard of proof. But they were given, for example, 2.90, 4.71.5, 17.10, and those all reference back to the beyond a reasonable doubt standard. Well, some of those instructions occurred a lot later. I mean, I think there are 100 pages of transcripts that occur between the curative, what you would say the curative instruction and the one that was given. So in context, I mean, as I mentioned, it was given all at the same time, right? And so then it came back and they were re-instructed on. So as the jury left off in the instructions, that was pretty firmly established in their mind. It certainly was highlighted. Well, in regards to the instructions I just referenced, but the special instruction itself was six pages long, and that was given all at the same time. And the situations here is different than a situation like Gibson, which didn't include, of course, the additional language. But also, the special instruction specifically told the jury that in order to find an appellant guilty of the charged offenses, it had to find that the State had proven him guilty beyond a reasonable doubt. And that's the language that is right after the challenge part of the special instruction. So that was also reiterated, that standard with regard to the charged offenses, many, many times in just the special instruction itself. I think the aspect that I found confusing is the instruction basically says, and maybe you can point me how this makes any sense, but the instruction says you can prove prior bad acts by preponderance. There's no doubt about that. And then it seems, and if you find that the defendant had the prior bad acts or committed the prior bad acts, you can find that the defendant had the disposition, right? And then there is the statement, if you find the defendant had such disposition, you may but are not required to find that he committed all of the charged offense or their lessors. So there is sort of an inferential problem there if you start with a preponderance burden, and then there's instructions that you can find the disposition, I'm sorry, the prior predisposition. Well, when you are discussing that part, it sounds like it sort of deals with the difference between this case and Gibson, because Gibson was dealing with the pre-1999 version of CALJIC 2.50.01. And it didn't include the additional language, which was definitely given here, about the uncharged evidence is insufficient by itself to find appellant guilty of the charged offenses. So that is curative language. That additional language was utilized here, and it did cure the problem that was found in Gibson. And even if this Court were to reach, find that there was error, I mean, any alleged error here was clearly harmless, because the special instruction, as I explained, and the overall jury instruction reiterated numerous times that the beyond reasonable doubt standard applied to the charged offenses. And then, as we cite in the briefs, there's also overwhelming evidence. With that, I'll submit unless the Court. Thank you. By way of brief rebuttal, I'd like to make three points. First of all, I'd like to point out that historically, other active evidence was not admissible, because of its tendency that, or the fear that the jury may convict the defendant because he was a bad man. So the admissibility historically was not. Now there are exceptions, and not only are there exceptions, but then the other active evidence can be found by a preponderance of the evidence. And that creates a very dangerous situation. That's exactly what we're faced with here. And the additional instruction that counsel referred to, which was that the evidence of prior bad acts is not enough by itself, it doesn't tell the jury, you still must find the defendant guilty beyond a reasonable doubt. It doesn't tell the jury what other evidence they must find, in addition to the other active evidence, where the burden is only preponderance. It still is very vague, and it's not sufficient to cure the problem created by Kalogic 2.50.01 and 2.50.1 in the special instruction. You know what bothers me, Mr. Crowe, is you're able to make that argument in closing argument. What you're saying to us now, you weren't precluded from saying to the jury, were you? Well, I wasn't the trial attorney, Your Honor. I know. I don't mean. A trial attorney in this situation is not precluded from making the arguments you're making now. There are certain things that have to be cured by closing argument and cross-examination. Yeah, I understand your point. And I respect that a solid attorney could make that argument. But I also would like to point out that, from a jury's point of view, the truth-given courtroom is the judge. When the judge gives an ambiguous instruction, it's very tough for an attorney. It's really an uphill road. I follow you, but we'd have to find that this was ambiguous, wouldn't we? Yes. Yes, absolutely. And that's my primary point. And if you do find that, and if there's a risk that this instruction impermissibly lowered the burden of proof, the conviction has to be reversed and this instruction has to be ruled impermissible because it is ambiguous and it lowers the burden of proof. I submit it. Thank you very much.
judges: Farris, Thomas, Bright